IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CHARTWELL STUDIO, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No.: 1:19-cv-06944 |
| | ) | |
| v. | ) | |
| | ) | |
| TEAM IMPRESSIONS, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | Judge Mary M. Rowland |
| | ) | |
| and | ) | |
| | ) | |
| THE PEEL PEOPLE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

MOTION OF DEFENDANTS TEAM IMPRESSIONS, INC.
AND THE PEEL PEOPLE, LLC
FOR LEAVE TO FILE SECOND AFFIRMATIVE
DEFENSE TO COUNT I OF COMPLAINT

Defendants Team Impressions, Inc. ("Team") and The Peel People, LLC ("TPP") (collectively, "Defendants"), by their attorneys, Schoenberg Finkel Beederman Bell Glazer, LLC, as their motion for leave to file the attached Second Affirmative Defense to Count I of the Complaint, state as follows:

1. On February 14, 2023, the Court issued its Memorandum Opinion and Order on the parties' cross-motions for summary judgment and motions to bar experts. In that Memorandum and Opinion, this Court determined that in the Seventh Circuit, functionality is an affirmative defense under the Lanham Act. (Dkt. 112). The Court cited *Publications Int'l, Ltd. v. Landoll, Inc.*, 164 F.3d 337 (7th Cir. 1998), in which the Seventh Circuit noted that there was a split in the Circuits as to whether in cases involving unregistered trademarks, functionality was an affirmative defense so that the burden of proof was on the defendant. The Court noted that Seventh Circuit

precedent held that functionality was an affirmative defense so that the burden of proof was on the defendant.

2.     On February 23, 2023, Defendants filed their Motion to Reconsider the Portion of the Court's February 14, 2023 Memorandum Opinion and Order Regarding Functionality ("Defendants' Motion to Reconsider"). (Dkt. 114). As noted in Defendants' Motion to Reconsider, after *Publications Int'l, Ltd.*, the Lanham Act was specifically amended to make clear that for an unregistered trademark or trade dress, the plaintiff bears the burden of proof. 15 U.S.C. § 1125; *Shire U.S., Inc. v. Barr Laboratories, Inc.*, 329 F.3d 348, 354 n.13 (3d Cir. 2003); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 976, 977 (N.D. Ill. 2000). As further noted in Defendants' Motion to Reconsider, "If a defendant does not bear the burden of proof on a defense, it is not an affirmative defense." *Household Financial Services v. Northeastern Mortgage Investment Corp.*, No. 00 C 0667, 2000 U.S. Dist. LEXIS 8975, at *4 (N.D. Ill. June 21, 2000). "[A] defendant need plead affirmatively only those defenses upon which he bears the burden of proof." *Sundstrand Corp. v. Standard Kollsman Industries, Inc.*, 488 F.2d 807, 813 (7th Cir. 1973).

3.     On April 4, 2023, the Court denied Defendants' Motion to Reconsider (Dkt. 117), holding that based upon *Publications Int'l, Ltd.*, functionality is an affirmative defense. Accordingly, Defendants request leave to amend to file its Second Affirmative Defense to Count I, attached hereto as Exhibit A.

4.     "[P]leading rules still 'favor decisions on the merits rather than technicalities.'" *Morris v. Daimler Trucks North America, LLC*, No. 20-cv-246-JPG, 2021 U.S. Dist. LEXIS 137403, at *1-2 (S.D. Ill. July 23, 2021), quoting, *Stanard v. Nygren*, 658 F.3d 792, 800-01 (7th Cir. 2011). A court should allow amendment except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

5.      Defendants do not believe that they unduly delayed in raising functionality. In their first pleading (Defendants' Rule 12(b)(6) Motion to Dismiss Complaint), Defendants asserted that all of the elements of Plaintiff Chartwell Studio, Inc.'s ("Chartwell") claimed protected trade dress were entirely functional.  (Dkt. 18, pp. 4, 6, 8; see also, Dkt. 24, pp. 3, 5). In its Complaint, Chartwell alleged its trade dress was nonfunctional. (Dkt. 1, ¶104). In their Answer, Defendants denied this allegation.  (Dkt. 32, ¶ 104). In its July 20, 2020, Memorandum Opinion and Order, the Court held that Chartwell bore the burden of proving non-functionality, which presented a question of fact and could not be decided on a motion to dismiss. (Dkt. 39, p. 11).  Additionally, given the amendment to the Lanham Act specifically imposing the burden of proof on the plaintiff and the lack of a subsequent decision from the Seventh Circuit, there was uncertainty as to whether functionality had to be pled as an affirmative defense after 1999.

6.      Furthermore, delay normally does not justify denying leave to amend a pleading unless it results in undue prejudice to the opposing party. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004); *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir. 1992).

> As recited above, however, delay by itself is normally an insufficient reason to deny a motion for leave to amend. *See Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). Delay must be coupled with some other reason. Typically, that reason, as the court determined it was in this case, is prejudice to the non-moving party.

*Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004). "But where Defendants would 'not [be] prejudiced in any legally relevant sense by the court's amendment,' and '[t]he equities ... weigh heavily  in favor of the [movant],' a court should exercise its discretion to allow

an amendment." *King v. Kramer,* No. 13-2379, 2014 U.S. App. LEXIS 13252, at *16-17 (7th Cir. July 10, 2014), quoting, *Matter of Delagrange*, 820 F.2d 229, 233 (7th Cir. 1987).

7.  Chartwell cannot claim any prejudice, bad faith, dilatory motive or repeated failure to cure deficiencies. As noted, functionality has been litigated since the start of this litigation. Defendants examined Chartwell's witnesses, including its expert, Mark Partridge ("Partridge") , extensively about the functionality of the elements of Chartwell's claimed trade dress. Partridge admitted that many of the elements of protectable trade dress claimed by Chartwell were, in fact, not arbitrary but utilitarian and functional. He also conceded that the location of the header at the top, the photograph of the product in use, the application instructions, the choking hazard advice and the "Made in the USA" designation all served some useful purpose. (See transcript of the deposition of Mark Partridge, attached hereto as Exhibit B, pp. 186-192).

WHEREFORE, Defendants Team Impressions, Inc. and The Peel People LLC respectfully request leave to file the attached Second Affirmative Defense to Count I of the Complaint.

Respectfully submitted,

By:  /s/ *Norman T. Finkel*
One of Defendants' Attorneys

Norman T. Finkel
norm.finkel@sfbbg.com
William R. Klein
bill.klein@sfbbg.com
**Schoenberg Finkel Beederman Bell Glazer LLC**
300 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
(312) 648-2300

## <u>CERTIFICATE OF SERVICE</u>

I, Norman T. Finkel, an attorney, hereby certify that on April 10, 2023, I caused a copy of the foregoing ***Motion of Defendants Team Impressions, Inc. and The Peel People, LLC For Leave to File Second Affirmative Defense to Count I of Complaint***, to be served via e-mail upon the following:

Timothy Liam Epstein
Brian C. Konkel, Esq.
**DUGGAN BERTSCH, LLC**
303 West Madison St., Ste. 1000
Chicago, IL 60606
tepstein@dugganbertsch.com
bkonkel@dugganbertsch.com

*/s:/ Norman T. Finkel*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CHARTWELL STUDIO, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No.: 1:19-cv-06944 |
| | ) | |
| v. | ) | |
| | ) | |
| TEAM IMPRESSIONS, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff, | ) | Judge Mary M. Rowland |
| | ) | |
| and | ) | |
| | ) | |
| THE PEEL PEOPLE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**SECOND AFFIRMATIVE DEFENSE OF DEFENDANTS
TEAM IMPRESSIONS, INC. AND THE PEEL PEOPLE, LLC
<u>TO COUNT I OF COMPLAINT</u>**

As their Second Affirmative Defense to Count I of the Complaint of Plaintiff Chartwell

Studio, Inc. ("Chartwell"), Defendants Team Impressions, Inc. and The Peel People, LLC allege

and state as follows:

1.    The elements of Chartwell's claimed protected trade dress are all functional.

2.    The use of a small header, differentiated in a different, bold color, that states at the

top "Peel & Stick", is entirely functional. The small header functions to allow the product to be hung

from hooks or displayed in racks at dollar stores, while also allowing the consumer to see the

product depicted in use. The different, bold color functions to draw attention to the product and

facilitate the text's readability. The text "Peel & Stick" description functions to inform the

consumer of the product's attributes.

3.    A photograph of the products themselves in use on the right side of the header

functions to allow the consumer to see the product as it would appear in use in a wall and allows the

consumer to see a depiction of the entire product without unfolding it or removing it from the rack at the store.

4.      A header in two distinctive, primary colors functions to draw attention to the product and facilitate the text's readability.

5.      A small green dot on the front of the package that states "Think Green" or "Go Green" functions to inform the consumer that the product is environmentally friendly. It functions to alert environmentally conscious consumers that the product will meet their goals.

6.      The high visibility of the product due to the lack of outer packaging is entirely functional. The lack of outer packaging functions  to allow visibility to the entire product and eliminates outer packaging costs.

7.      A backside label that encourages consumers to post and share their creations on Facebook, includes the moniker "Made in the USA," contains application instructions for the Products, advises that the products are choking hazard, and includes further reproductions of the products is entirely functional.  Encouraging consumers to post and share their creations on Facebook functions to promote communication between consumers and the company and allows the company feedback on designs that consumers desire.  The use American flags and denotation "Made in the USA" function to advise consumers where the product is manufactured and are not protectible under the Lanham Act. 15 U.S.C. § 1052(b),(e)(2). The application instructions are purely functional by informing the consumer on the proper use of the product. . The choking hazard warning functions to warn consumers and is required by law. 15 U.S.C. § 1278. A reproduction of the product functions to allow the consumer to see the product as it would appear in use in a wall and allows the consumer to see a depiction of the entire product.

8.      Under the Lanham Act, Chartwell bears the burden of proof on functionality, which Chartwell cannot meet. 15 U.S.C. § 115(b)(8).

2

WHEREFORE, Defendants Team Impressions, Inc. and The Peel People, LLC pray for the entry of judgment in their favor and against Chartwell Studio, Inc. on Count I of the Complaint and for such other and further relief as this Court deems just, including awarding Defendants their attorneys' fees under 15 U.S.C. § 1117.

Respectfully submitted,

By:     /s/ *Norman T. Finkel*
                One of Defendants' Attorneys

Norman T. Finkel
norm.finkel@sfbbg.com
William R. Klein
bill.klein@sfbbg.com
SCHOENBERG FINKEL BEEDERMAN BELL GLAZER LLC
300 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
(312) 648-2300

# EXHIBIT B

Chartwell Studio, Inc v. Team Impressions, Inc
Mark Partridge                                              4/19/2022

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHARTWELL STUDIO, INC.,          )
                                 )
         Plaintiff/              )
         Counter-Defendant,      )
                                 )
    vs.                          )   No. 1:19-cv-06944
                                 )
TEAM IMPRESSIONS, INC.,          )
                                 )
         Defendant/              )
         Counter-Plaintiff.      )

         The videoconference deposition of MARK
PARTRIDGE, called by the Defendant for
examination, taken pursuant to the Federal Rules
of Civil Procedure of the United States District
Courts pertaining to the taking of depositions,
taken before ROBIN M. CHIMNIAK, CSR, RMR, CLNR,
taken remotely via videoconference on the 19th day
of April, 2022, at the hour of 9:17 a.m.

ROBIN M. CHIMNIAK, Certified Shorthand Reporter
State of Illinois, CSR License No. 084-001999

186

bit -- I don't have examples from here.

          But the way -- the way a cork screw

works, cork screw has a utilitarian appearance

because of what it does.

     Q.   But we're not talking about the

product.  We're talking about the trade dress;

right?

     A.   I know.  And -- and so that's why I

say, it's not present here.  I don't see a

utilitarian reason for having this combination of

design elements that imitates plaintiff's

combination of design element.

     Q.   Okay.  Is there a utilitarian or

functional reason for having on a trade dress a

photo depicting the product in use?

     A.   A photo of the product in the location

and size and shape is not.  The depiction of the

product that is being sold, that aspect, as an

isolated item, would have a use.

     Q.   So to answer my question specifically:

Is a photo depicting the product in use

utilitarian or functional?

     A.   A photo depicting the product could

be -- have a use and therefore utilitarian.

Chartwell Studio, Inc v. Team Impressions, Inc

Mark Partridge                                                    4/19/2022

187

Q.    Okay.

A.    The exact size and placement of that
photo is not.

Q.    Does the term "peel & stick" have a
functional or utilitarian purpose?

A.    I would say the phrase "peel & stick"
by itself is -- has a descriptive use.  A
placement within a box of a certain size and
placed on the packaging does not.

Q.    Okay.  And I understand you're going to
keep doing that for each one of these I ask.

A.    Yes, because that's my opinion -- my
view.  Well, that's the reality.

Q.    I understand all that.  And my -- so
I'm going to assume that you're going to answer
that for each of these.  I'm just going to ask you
the questions.

      Do the instructions on the back of a
product have a utilitarian or functional use?

A.    They describe certain actions that
relate to the product.  They have a use.

Q.    Does a choking hazard have a
utilitarian or functional use?

A.    Yes, that -- that has a use.

Chartwell Studio, Inc v. Team Impressions, Inc

Mark Partridge                                                          4/19/2022

188

1          But, you know, you can keep asking the

2   question, but it misses the point.  My opinion is

3   not each of those individually is protectable.

4          Q.    I --

5          A.    My point is that the arbitrary

6   combination of elements is protected.  So I don't

7   see the point in -- in that inquiry on each one of

8   those.

9          It's the combination that matters.

10         Q.    I understand.  And I'm here to ask you

11  questions, and you're here to answer my questions,

12  not to determine whether my questions are any good

13  or not.  Okay?

14         A.    Okay.  I apologize.  I just am -- the

15  questions don't completely make sense because

16  that's not what's at issue.  It's the arbitrary

17  combination is what's at issue.

18         Q.    Right.

19         Does the phrase "Made in the USA" have

20  a utilitarian or functional use?

21         A.    The words are descriptive and have a

22  use in -- per se.

23         Q.    Does the ability to have the transparent

24  packaging, or packaging which allows the product

Chartwell Studio, Inc v. Team Impressions, Inc

Mark Partridge                                                    4/19/2022

189

1   to be seen in its entirety, have a use?

2       A.    Yeah, I think -- you know, I thought

3   about that question.  If I might add, as I recall,

4   the product -- is there a packaging to it?  The

5   product itself can be seen.  I don't know that it

6   has -- actually has a wrapper, at least not in all

7   cases.

8            But at any rate, there is a use in the

9   sense that you can see the product.

10      Q.    Okay.  And I don't know -- I don't know

11  whether somebody talked to you at lunch or not,

12  but your prior answer is going to stand.

13      A.    Was what?

14      Q.    I don't know -- your prior answers as

15  to whether there was a sleeve on the packaging

16  have already -- are already of record.

17      A.    Fair enough.  That's --

18           MR. KONKEL:  And he's entitled to

19      correct his answer, Bill.

20           THE WITNESS:  I did -- I did take a

21      look at the -- a product, and that's what

22      I -- the actual product.

23                You were -- you were asking me to

24      do it from memory.  I took a look at the

Mark Partridge                                                    4/19/2022

190

1       actual product, and I -- that's how I -- what

2       it looks like to me, is that you can see the

3       product, but I can't tell that there's a

4       plastic covering on top.

5   BY MR. KLEIN:

6       Q.     Okay.  And you looked at that actual

7   product over lunch?

8       A.     Yes, I did.  After we talked about it

9   and took the break, I was wondering about that.

10      Q.     Okay.  And you hadn't seen any of the

11  actual products prior to the time that you issued

12  your report; is that correct?

13      A.     I'd seen photographs and -- and the --

14  yeah, the photographs that you've seen and we've

15  talked about.  And, you know, again, that portion

16  is -- is the list of what the court identified,

17  and so I was -- I guess there's -- I don't know.

18             What I see when I look at the actual

19  product is I can't tell that it's wrapped in a

20  plastic covering or not.

21      Q.     Okay.  And at the time you were --

22  rendered your report, you assumed that there was a

23  plastic covering over it?

24      A.     I didn't pay a lot of attention to that

312.781.9111                                              630.983.0030

Chartwell Studio, Inc v. Team Impressions, Inc

Mark Partridge                                              4/19/2022

191

1    point.  It wasn't critical whether it was -- you

2    could see the product on its own or whether you

3    could see it through a plastic wrap.

4         Q.    Okay.  And --

5         A.    I don't see a material difference in

6    that in this situation.  But anyway, I saw -- you

7    know, I took a look at the product over lunch.

8         Q.    Okay.  And does the fact that you can

9    see the product itself have a utilitarian or

10   functional use?

11        A.    Seeing the product has a use.  So on

12   it -- you know, breaking it into pieces, that --

13   that piece, that has a use.  That aspect is

14   useful.

15        Q.    Then to go on, your report talks about

16   the degree of care by consumers.

17              What's your understanding of why

18   consumers pick particular wall décor?

19        A.    They -- they intend to decorate the

20   places where they live or intend to decorate it

21   for others.  That would be the apparent purpose.

22        Q.    Right.  And so what's more important

23   to -- to the consumer, the artwork and design of

24   the product or the manufacturer?

192

A.      That's hard to say.  Probably varies.

        In some cases, as suggested by the
woman who was in that video, the source is
extremely important.

        And that would be the case, I think.
The source would be extremely important, and you'd
rely on the indication of source to help you judge
that.

Q.      Other than the YouTube video, is there
any basis for your conclusion that the source of
the product is extremely important to the average
consumer?

A.      Well, these are not sold as generic
products.  They're all branded by the companies.
And there's a reason for that.  They want
customers to recognize their brand, to be happy
with their brand, and to buy it.  So source is an
important part of that.

Q.      Okay.

A.      And the trade dress is a key -- key
way, particularly in self-service products,
that -- that consumers can make quick judgements
about the source of the product.

Q.      Okay.  Other than the YouTube video, is